IN THE

TENTH COURT OF APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-05-00186-CV

 

In re GMAC
Commercial finance, l.l.c.

 

 



Original Proceeding

 

 



O R D E R



 

          In this original proceeding, we denied
the petition for writ of mandamus of Relator GMAC Commercial Finance, L.L.C. in
a Memorandum Opinion on April 27, 2005.  Thereafter, on May 16, 2005, Humboldt
Wedag, Inc. (HWI), a real-party-in-interest, filed a “Verified Motion to
Expunge Record and for Return of Documents.”  In this motion, HWI requests us
to expunge from our record in this proceeding a privileged document that it
inadvertently included in its “Optional Appendix to Brief of Humboldt Wedag,
Inc. in Opposition to Petition for Writ of Mandamus.”  It further requests us
to order all parties in this proceeding to return all copies of this document to
HWI.  HWI unsuccessfully sought voluntary return of the document from the
parties in this proceeding.

          The fourteen-page document at issue is
a November 10, 2003 letter from James K. Bidgood, Jr., HWI’s attorney in Atlanta, Georgia, to Clay Lewis Jenkins, HWI’s attorney in Waxahachie.  In its verified motion,
HWI explains how the letter was inadvertently included as Exhibit 3 in its
Optional Appendix.  On its face, the letter plainly contains core work product
(as defined by Tex. R. Civ. P.
192.5(b)(1)) and further constitutes a communication protected by the
lawyer-client privilege (Tex. R. Evid.
503(b)(1)(E)).  The other parties to this proceeding—Relator GMAC and
real-parties-in-interest Holcim (Texas) Limited Partnership and HC GP
Inc.—filed responses opposing HWI’s verified motion.  We believe that HWI is
entitled to relief.

          We find no authority allowing us to
expunge the letter from our record.  But we do have authority to seal a
privileged document inadvertently made a part of an appellate court record.  See
Monsanto Co. v. Davis, 110 S.W.3d 28, 29-30 (Tex. App.—Waco 2002, order). 
Accordingly, we order the Clerk of this Court to seal the original and all
copies of the November 10, 2003 letter from James K. Bidgood, Jr. to Clay Lewis
Jenkins, attached as Exhibit 3 in the Optional Appendix to Brief of Humboldt
Wedag, Inc. in Opposition to Petition for Writ of Mandamus, on file in this
cause (10-05-00186-CV).  These documents shall remain under permanent seal until
the entire case file is destroyed pursuant to the Records Retention Schedule
approved for this court (normally six years from the date of judgment), unless
otherwise ordered by this court.

          Rule 193.3(d) of the Texas Rules of
Civil Procedure, while applicable to the inadvertent production of privileged
material in discovery, provides guidance and authority on the return of the
document from the parties to this proceeding and any persons who obtained or
received a copy of the document from any party to this proceeding.  Accordingly,
we order all parties to this proceeding to return to Clay Lewis Jenkins, HWI’s
Waxahachie counsel, all copies and images of the November 10, 2003 letter from
James K. Bidgood, Jr. to Clay Lewis Jenkins, attached as Exhibit 3 in Optional
Appendix to Brief of Humboldt Wedag, Inc. in Opposition to Petition for Writ of
Mandamus, including all copies and printed images of this letter that any party
to this proceeding provided to any other person.  All copies and printed images
of this letter shall be returned to Mr. Jenkins by certified mail within ten
days of the date of this order.  All electronically stored images of the letter
shall be permanently deleted or destroyed.  All parties to this proceeding
shall, within ten days of the date of this order, certify to this court by
correspondence that they have complied with the orders in this paragraph.

          

 

 

 

                                                                   BILL
VANCE

                                                                   Justice

 

Before
Chief Justice Gray,

          Justice
Vance, and

          Justice
Reyna

          (Chief
Justice Gray dissenting)

Motion
granted in part

Order
delivered and filed July 27, 2005

Publish






f his warrantless arrest. Henderson then pleaded no contest to both counts of the
indictment. The trial court found him guilty and assessed punishment, enhanced by two prior
felony convictions, at forty-five years in prison on count one and twenty years in prison on count
two. In two points of error, he appeals his conviction for possession of a controlled substance.
      At the hearing on Henderson's motion to suppress, Officer Hugh Wallace, an officer with the
Bryan Police Department's Street Crimes Apprehension Team, testified that on January 15, 1993,
he and four other officers were working surveillance for Billy Jarrett and Dennis Thane, two
undercover officers conducting a "buy-bust" operation in the 1200 block of Henderson Avenue. 
Wallace testified that at 11:30 p.m. he and the other surveillance officers were dispatched by
Jarrett and Thane, who had just purchased two rocks of cocaine in exchange for a marked twenty
dollar bill. Over a police radio the undercover officers transmitted a description of the suspect—a
tall black man wearing a blue cap and dark blue coveralls. Wallace testified that he arrived at the
pre-arranged location within twenty to thirty seconds of the radio transmission.
      After securing the area and talking to two other people, Wallace directed his attention to
Henderson, who matched the description provided by the undercover officers. Another officer
had already conducted a pat-down search and indicated that there were some items in the left- and
right-front pockets of Henderson's coveralls. Wallace informed Henderson that they were
conducting a narcotics investigation, that someone matching his description had just sold some
drugs, and that they were searching for narcotics and some money. Henderson indicated that he
did not have any narcotics on him. According to Wallace, when he asked if it was okay to conduct
a search, Henderson said, "That's fine." Wallace found a piece of paper currency and a matchbox
in Henderson's left-front pocket, a zippered pocket that was left open. Wallace removed the
currency and compared it to a photocopy of the twenty dollar bill used in the "buy-bust" operation. 
At that point, Henderson was informed that he was under arrest. Continuing the search, Wallace
found chips of crack cocaine in the right-front pocket of Henderson's coveralls. Henderson was
then taken to the county jail, where Jarrett and Thane verified that he was the suspect from whom
they had purchased two rocks of cocaine.
      At the hearing on the motion to suppress Henderson argued that, because he was in fact
wearing a black cap and his coveralls were actually dark green, the surveillance officers lacked
probable cause to stop and arrest him for delivery of cocaine. Wallace testified, however, that it
was very dark at the location and that Henderson's coveralls were dark green, "darker than olive
drab." According to Wallace, because the suspect was wearing dark colors, the description
provided by the undercover officers during the nighttime hours was "a good description." 
Furthermore, the jail administrator and records custodian, called as a witness for the defense,
testified that the inventory of Henderson's property, made at the time Henderson was booked into
jail, listed a pair of "blue coveralls."
      In point one Henderson contends that the trial court erred in denying his motion to suppress
evidence obtained as a result of his warrantless arrest because the arrest was not based on probable
cause as required by the Fourth Amendment to the United States Constitution. Under federal law,
probable cause to arrest depends upon whether, at the moment the arrest was made, facts and
circumstances within the officers' knowledge and of which they had reasonably trustworthy
information were sufficient to warrant a prudent person in believing that the suspect had
committed or was committing an offense.


 Because Wallace and the other surveillance officers
immediately responded to the radio transmission, and Henderson was the only one in the area who
substantially matched the description provided by the undercover officers, we hold that the officers
had probable cause to arrest Henderson for delivery of cocaine. We overrule point of error one.
      In point two Henderson contends that the trial court erred in denying his motion to suppress
evidence obtained as a result of his warrantless arrest because the arrest was not based on probable
cause as required by article I, section nine, of the Texas Constitution. In his argument and
authorities under point two, Henderson argues that the arrest was improper under Texas law
because it was not authorized by article 14.04 or article 14.03(a)(1) of the Texas Code of Criminal
Procedure.


 The State argues, however, that because the delivery of cocaine offense was
committed in the presence of Officers Jarrett and Thane, the arrest was authorized by article 14.01
of the Code of Criminal Procedure.


 Article 14.01 does not require the officer who views the
commission of a crime to be the arresting officer.


 Jarrett and Thane did not have to personally
make the arrest under article 14.01 because they were an integral part of the arrest team.


 They
transmitted Henderson's description to the surveillance officers, who arrived at the location in less
than a minute. Furthermore, Wallace was specifically working "surveillance" for a preplanned
"buy-bust" operation and was familiar with the area. Finally, Jarrett and Thane verified
Henderson's identity a short time later at the county jail. As a result, we find that the viewing
officers' participation in and awareness of Henderson's arrest made them just as much a participant
in Henderson's arrest as if they had seized Henderson themselves.


 Therefore, the arrest was
proper under article 14.01.
      In his argument under point two Henderson also relies upon Rance v. State for the proposition
that probable cause was not sufficient to support an arrest under the Texas Constitution


. In
Rance, however, the arresting officer could remember only a general description of the suspect
as provided by the viewing officer, even the general description was substantially different from
that of the defendant at the time of the arrest, and the undercover officer later informed the
arresting officer that the defendant was not one of the suspects from whom he had purchased
cocaine.


 In this case the State presented evidence that Wallace had probable cause to arrest
Henderson, a tall black man wearing dark coveralls and a dark cap, because he substantially
matched the description provided by the undercover officers.


 Accordingly, we overrule point of
error two.
      We affirm the judgment.
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed November 17, 1993
Publish